JOHN R. CORY *et al.*, Plaintiffs-Appellees, *v.* BETTY E. MINTON *et al.*, Defendants-Appellants.

First District (2nd Division)   No. 76-330

Opinion filed May 17, 1977.

Moriarty, Rose & Hultquist, Ltd., of Chicago, for appellants.

Michael S. Welzien, of Lombard, and George C. Pontikes, of Foss, Schuman & Drake, of Chicago, for appellees.

Mr. JUSTICE STAMOS delivered the opinion of the court:

Plaintiffs, John R. Cory and Mildred Ann Cory, brought an action pursuant to section 57.1 of the Civil Practice Act (Ill. Rev. Stat. 1973, ch. 110, par. 57.1), seeking to adjudicate the rights of the parties with respect to certain real property occupied by defendants, Betty E. Minton and Rex E. Minton, and, further requesting the court to find that plaintiffs were entitled to occupy said premises. Defendants appeared and filed an answer and counterclaim through which they alleged that they took possession of the disputed premises pursuant to a written agreement and lease in which plaintiffs sold their beauty shop business to defendants and leased them the premises upon which the business had been conducted. Plaintiffs thereafter moved for, and were granted, summary judgment.

Defendants' motion to vacate that judgment was denied and from entry of that order defendants currently appeal.

The sole issue properly presented for review concerns whether the trial court erred in awarding plaintiffs summary judgment, specifically, whether the pleadings, affidavits and exhibits on file serve to create a genuine issue as to a material fact so as to preclude plaintiffs' entitlement to judgment as a matter of law. Ill. Rev. Stat. 1973, ch. 110, par. 57.

A review of the record indicates that plaintiffs are the owners of a commercial property known as 4405 and 4407 Butterfield Road in Bellwood, Illinois, upon which is situated a two-storied building. This building is internally divided along its lateral axis such that the ground floor is occupied by two adjacent stores of approximately equal floor space and whose entrances front on 4405 and 4407 Butterfield Road, respectively. These two commercial units are connected by means of a doorway constructed in their common wall so as to provide a means of access between the two units. The unit whose entrance fronts on 4405 Butterfield Road is further subdivided into two similarly connected front and rear portions. The aforementioned access between 4405 and 4407 Butterfield Road is provided through this rear portion and it is this area which forms the basis of the instant dispute.

Prior to October of 1972, plaintiffs were the owners and operators of a beauty shop known as "The Ming Tree Salon of Beauty" the entrance of which was at 4407 Butterfield Road. Thereafter, on October 30, 1972, plaintiffs entered into a written agreement with defendants whereby plaintiffs sold to defendants their beauty shop business, together with all supplies, fixtures and good will for $19,400.

Paragraph 1 of the purchase agreement states as follows:

"1. SALE OF BUSINESS. The Seller shall sell and the Buyer shall buy, free from all liabilities and encumbrances, the beauty shop business now being conducted by the Seller at the store premises known as 4407 Butterfield Road, Bellwood, Illinois * * *."

Paragraph 4 of this agreement states as follows:

"4. LEASE. The Seller as lessor shall lease the store premises to the buyer as lessee by written lease * * *."

Paragraph 7 of this agreement further provides:

"7. REPRESENTATIONS AND COVENANT OF BUYER. The Buyer represents that he has examined the premises in which the business is now being conducted by the Seller * * *."

Pursuant to this agreement, the parties entered into a lease agreement for a term of three years, beginning November 8, 1972, and ending November 7, 1975. The granting clause of this agreement describes the premises so demised as "4407 Butterfield Road, Bellwood, Illinois."

Paragraph 4 of the lease is printed and provides:

"5. Lessee has examined and knows the condition of the Premises and has received the same in good order and repair, and acknowledges that no representations as to the condition and repair thereof, and no agreements or promises to decorate, alter, repair, or improve the Premises, have been made by Lessor or his agent prior to or at the execution of this lease that are not herein expressed."

Thereafter, the following typewritten words appear: "Seller to decorate washroom and office wall if required."

According to the lease, defendants took over the business and began utilizing the premises. However, in so doing, defendants occupied both the commercial unit with an entrance fronting on 4407 Butterfield Road and the adjacent and connecting rear portion of the commercial unit fronting on 4405 Butterfield Road. During the period of tenancy, defendants carpeted and redecorated portions of the latter area and utilized it in the operation of the beauty shop business.

On October 21, 1973, approximately one year after defendants had taken over the business, plaintiffs made a demand upon them to recover the rear portion of 4405 Butterfield Road. Defendants asserted their right to occupy the space. Plaintiffs took no legal action. Similar requests and responses occurred on August 29, 1974, and again on January 26, 1975, when plaintiffs chose to file the instant action.

Plaintiffs assert that with respect to the demised property the lease in question is unambiguous and, as a matter of law, admits of but one interpretation (*i.e.*, the property which is the subject of the lease is 4407 Butterfield Road); that this designation serves to exclude any other property similarly described; that the lease, so construed, represents the final and true expression of the party's intent; that this intent may not be evidenced by other collateral matters; and, hence, that the trial court properly awarded plaintiff summary judgment on their complaint to recover the disputed property.

Defendants counter that the lease in question admits of latent ambiguities; that such ambiguities may be ascertained through the admission of extrinsic evidence; that such evidence as was adduced before the trial court calls into issue the identity of the property which was demised by the lease; that the identity of the property so demised constitutes the sole material issue generated by the instant action; that there is a genuine issue between the parties regarding the identity of the demised property; and, hence, that the trial court erred in awarding plaintiffs summary judgment.

■■■ The construction of a lease is governed by the intention of the parties thereto and the court should ascertain and give effect to such

intention as far as that may be done without contravening legal principles. (*Dasenbrock v. Interstate Restaurant Corp.* (1972), 7 Ill. App. 3d 295, 287 N.E.2d 151.) The intention of the parties must be ascertained, if possible, from the language of the lease, and the words used should be given their common and generally accepted meaning. (*American National Bank & Trust Co. v. Lembessis* (1969), 116 Ill. App. 2d 5, 253 N.E.2d 126.) In such cases where the language of a lease admits of ambiguity, either patent or latent, the court may consider the position of the parties, the surrounding circumstances which existed at the time of the execution of the lease and the facts in connection with it. *South Parkway Building Corp. v. South Center Department Store, Inc.* (1958), 19 Ill. App. 2d 14, 153 N.E.2d 291.

■■ A latent ambiguity occurs where a writing appears on its face clear and unambiguous, but which, in fact, may be shown by extrinsic evidence to be uncertain in meaning. Such a latent ambiguity may be demonstrated and explained by parol evidence. (See *South Parkway Building Corp. v. South Center Department Store,* and cases cited therein.) A determination of the extent of the property included in a lease of premises described by street numbers may be subject to such ambiguity. See Annot., 8 A.L.R. 673 (1920).

■■ In the instant case, the lease admits of such latent ambiguity. The street address description of the premises as it appears in the agreement's granting clause appears to be clear and unambiguous. However, within the text of the lease, lessor covenants "to decorate [a] washroom and office wall" located within the demised premises. The location of this room and wall are not further defined in the lease nor are they self-determining. Defendants assert that the room and wall in question are situated within 4405 Butterfield Road. Plaintiffs deny that this is the case and review of the record does not resolve the issue.

Examination of extrinsic evidence adduced below reveals additional and potentially differing descriptions of the property which the parties intended to be the subject of the lease. The beauty shop business purchase agreement entered into between the parties contemporaneously with the lease concerns "premises in which the business is now being conducted" by plaintiffs. Defendants assert that the rear portion of 4405 Butterfield Road was so utilized by plaintiffs and, hence, was intended by the parties to be the subject of the lease. Plaintiffs deny that this is the case and review of the record does not resolve the issue. This issue is further complicated by the extensive redecorating commissioned by defendants during the term of the lease. This modification of the disputed premises, undertaken as it was with the knowledge of plaintiffs and over a period of two years, presents an indicia of mutual conduct of the parties after the lessee had taken possession of the premises which may be considered in

determining the meaning and the provisions of the lease. See 24 Ill. L. & Prac. *Landlord & Tenant* §§42, 43, 44, 47 (1956).

■■ Upon this analysis, it appears that there exists as between these two parties a genuine issue as to a material fact which serves to preclude plaintiffs' entitlement to judgment as a matter of law. From the record as it stands fair-minded men may draw differing conclusions as to the parties' intentions and there are presented several factual disputes which may not be resolved in a summary judgment procedure. See *State National Bank v. Kewanee National Bank* (1973), 16 Ill. App. 3d 272, 305 N.E.2d 732.

For the aforementioned reasons the judgment of the circuit court of Cook County is reversed and the cause remanded for further proceedings.

Reversed and remanded.

DOWNING, P. J., and PERLIN, J., concur.