ALBERT C. EBERT, Plaintiff-Appellant, v. DR. SCHOLL'S FOOT COMFORT SHOPS, INC., Defendant-Appellee.

First District (5th Division)   No. 84—0136

Opinion filed October 18, 1985.

Linda Kay Staton, of Chicago, for appellant.

Harry Golter and Timothy G. Nickels, both of Wildman, Harrold, Allen & Dixon, of Chicago, for appellee.

PRESIDING JUSTICE MEJDA delivered the opinion of the court:

The present action arose following the termination of commercial lease negotiations between plaintiff, Albert C. Ebert (plaintiff), as lessor and defendant, Dr. Scholl's Foot Comfort Shops, Inc. (defendant), as lessee. Plaintiff now appeals from the trial court's entry of summary judgment orders in favor of defendant. Plaintiff contends that (1) the summary judgments were improper since material issues of fact were in dispute, (2) the trial court erred in failing to find that a contract existed between the parties, and (3) the trial court erred in finding a holdover tenancy under the terms and conditions of the prior lease. We affirm.

Defendant leased and occupied the property known as 19-21

North Wabash Avenue for approximately 30 years. The initial lease for the property was executed on November 15, 1950, between defendant and George S. Lurie, Joseph M. Reich, and Sidney J. Wolf as successor trustees under a trust agreement dated December 29, 1920, and known as Shops Realty Trust. Successive agreements amended and extended the lease and, on July 25, 1969, the final lease, extending the term to April 30, 1981, was executed by the original parties.

In 1979, the Cosmopolitan National Bank of Chicago, under trust No. 23668, dated September 15, 1977, acquired legal title to the property commonly known as 17-25 North Wabash Avenue, Chicago, Illinois. The original beneficial owner of trust No. 23668 was Walter Canton. Prior to April 22, 1980, Canton conveyed his beneficial interest to plaintiff.

On April 22, 1980, defendant wrote to plaintiff's agent, acknowledging the April 30, 1981, lease expiration date, and requesting a lease renewal meeting. The parties, however, were unable to meet until March 9, 1981. At the meeting, plaintiff informed defendant's agent, Herbert Kotkin, that he intended to remodel the 19-21 North Wabash Avenue property. Plaintiff explained that he intended to divide the space then leased by defendant into two rental spaces. This division would reduce defendant's 40 foot frontage at 19-21 North Wabash Avenue to a 20 foot frontage at 21 North Wabash Avenue. Kotkin did not object to the space reduction. He did, however, express concern that defendant's business would be impeded during the construction period. Prospective rental fees were not determined at this time.

Negotiations between the parties and/or their agents continued throughout April of 1981. On May 5, 1981, plaintiff's agent sent defendant a standard form lease, requesting that it be signed and returned to plaintiff within 10 days. Paragraph 17(g) of the form lease provided as follows:

"Submission of this instrument for examination does not constitute a reservation or an option for the premises. The instrument becomes effective as a lease upon the execution and delivery both by Lessor and Lessee."

Defendant made changes and deletions in the form lease before signing and returning it to plaintiff on May 14, 1981. Paragraph 17(g), however, was left intact. On the same day, Kotkin sent plaintiff the following letter.

"Dear Mr. Ebert:

As you know, we have been working diligently with Ann An-

novitz and our attorneys on the correction and execution of our final lease draft. Meanwhile, we realize that our existing lease expired April 30, 1981, and we wish to acknowledge, by this letter, that we have agreed to the new rate that is effective May 1, 1981, so that our accounting department can proceed to reimburse you at the correct rental. This rate for May 1, 1981, through April 30, 1982, is $9,583.30 a month. This totals to $115,000 for this coming twelve months.

If you have not cashed our original rent payment for 19 North Wabash Avenue, then I suggest you return it to my attention. I am having our accounting department forward to you a check for the May rent at the new rate.

Within the next few weeks we will finalize, between the two of us, the final lease document and we will be on our way to a profitable ten-year association.

If you have any further questions, please feel free to contact me by telephone, and I am sure we can iron out any problem. Thank you.

Best wishes.

Herbert Kotkin."

Plaintiff rejected the May 14 lease and, on May 20, 1981, sent defendant a new lease which differed from the May 14 lease.

On June 15, 1981, defendant advised plaintiff that the May 20 lease was unacceptable, and that it no longer wished to enter into a long-term lease agreement for the 21 North Wabash Avenue property. Defendant then offered to continue to lease the property as a month-to-month tenant at the $9,503.33 per month rate noted in the May 14 letter. Plaintiff stated that he would consider the offer.

Plaintiff subsequently signed the previously rejected May 14 lease and mailed it to defendant. In addition, plaintiff deposited the May and June rent checks in his account. Further negotiations between the parties failed, and defendant vacated the premises on July 9, 1981.

On July 27, 1981, plaintiff filed his initial complaint alleging that defendant had breached an existing lease agreement, and that defendant had been a holdover tenant. Plaintiff subsequently amended his complaint and excluded the holdover claim. Thereafter, defendant filed a counterclaim alleging overpayment for the holdover period, and, having paid $19,166.66, prayed judgment in the amount of $6,916.66.

On May 2, 1983, the trial court granted defendant's motion for summary judgment on plaintiff's amended complaint. In the same or-

der, the court granted defendant's motion for summary judgment on the counterclaim. The second ruling, however, was limited to liability and was accompanied by an order for prove-up to determine damages. The May 2 order therefore, was not deemed final and appealable. On July 13, 1983, the trial court awarded defendant $4,574.64 on the counterclaim and found no reason to delay appeal or enforcement.

On July 25, 1983, plaintiff, through a new attorney, filed a motion "to vacate the order entered granting defendant's motion for summary judgment and findings against the plaintiff." At the hearing on plaintiff's motion, defendant objected to the filing because the acting attorney was not of record. The trial judge granted plaintiff's new counsel until August 26, 1983, to file a substitution of attorneys. No substitution of attorneys was filed, however, until October 21, 1983.

On December 20, 1983, the trial court denied plaintiff's motion. On January 11, 1984, plaintiff filed a notice of appeal, wherein he appealed from the trial court's denial of his post-trial motion. On May 23, 1984, defendant moved to dismiss plaintiff's appeal. On August 2, 1984, plaintiff presented a motion for leave to file an amended notice of appeal. The motions were taken with the appeal for decision.

I

Before addressing the merits of the appeal, we must determine whether plaintiff has properly invoked the appellate jurisdiction of this court. (*In re Marriage of Rossi* (1981), 100 Ill. App. 3d 669, 672, 427 N.E.2d 294.) Jurisdictional questions are implicit in both defendant's motion to dismiss the appeal and in plaintiff's motion to file an amended notice of appeal. We therefore begin by resolving these concerns.

A

The motion to dismiss this appeal is based on defendant's contention that the appeal is defective.[1] Initially, defendant maintains that the attorney filing plaintiff's post-trial motion on July 25, 1983, was not the attorney of record, and therefore, did not have authority to address the court on that date. Defendant supports this argument by citing Supreme Court Rule 13(c)(1), which states as follows:

---

[1]Initially, defendant's motion named four defects in plaintiff's appeal. These included (1) the fact that plaintiff's brief did not comply with Supreme Court Rules 341 and 342; (2) the fact that the record on appeal was incomplete; (3) that plaintiff's appeal was not timely; and (4) that the notice of appeal failed to comply with Supreme Court Rule 303(c)(2). Prior to our hearing of this appeal, plaintiff filed both an amended brief and supplemental records.

"*Appearance and Withdrawal of Attorneys.*

(1) *Addressing the Court.* An attorney shall file his written appearance or other pleading before he addresses the court unless he is presenting a motion for leave to appear by intervention or otherwise." (87 Ill. 2d R. 13(c)(1).)

In addition, defendant states that at the August 19, 1983, hearing on plaintiff's motion, the trial court allowed plaintiff's new counsel seven days in which to file a substitution of attorneys. Counsel for plaintiff, however, did not file an appearance in this case until October 21, 1983. Defendant maintains that counsel's failure to comply with either Rule 13(c)(1) or the court's directives serves to render plaintiff's post-trial motion a nullity. Defendant argues that since no timely post-trial motion was properly filed in plaintiff's behalf, and more than 30 days elapsed before any notice of appeal was filed, the appellate court lacks jurisdiction to review the trial court's orders. *Allabastro v. Wheaton National Bank* (1980), 91 Ill. App. 3d 222, 224, 414 N.E.2d 537.

■■ We do not accept this conclusion, however, since we disagree with defendant's assertion concerning the validity of plaintiff's post-trial motion. Defendant has presented no authority requiring the nullification of an otherwise proper motion merely because of counsel's failure to file a timely substitution of attorneys. Moreover, the record before us gives no indication that counsel's tardiness caused either prejudice to defendant or any substantial inconvenience to the trial court. Despite any failure by plaintiff's attorney, the parties remained properly before the court throughout the proceedings below. Thus, the filing of plaintiff's post-trial motion effectively stayed the 30-day notice of appeal period until December 20, 1983, when the motion was denied. Since plaintiff's original notice of appeal was filed on January 11, 1984, within 30 days of the denial of the post-trial motion, the original notice of appeal was timely.

B

Defendant's second argument is that the original notice, even if timely, was nevertheless defective because it failed to specify either the judgment appealed from or the relief sought by plaintiff. Before addressing this argument, however, we must determine whether or not to accept plaintiff's amended notice of appeal. This determination is necessary since acceptance of plaintiff's amended notice would render moot any contention concerning the contents of the original notice.

The filing of a notice of appeal within the 30-day period prescribed by Supreme Court Rule 303(a) is mandatory and jurisdictional. (*City Wide Carpet, Inc. v. John* (1980), 83 Ill. App. 3d 538, 541, 404 N.E.2d

465; 87 Ill. 2d R. 303(a).) A notice of appeal filed more than 30 days after the entry of a final judgment will be insufficient to vest the appellate court with jurisdiction. (*Fairfax Family Fund, Inc. v. Couch* (1982), 103 Ill. App. 3d 492, 497, 431 N.E.2d 461.) However, Supreme Court Rules 303(c)(4) and 303(e), taken together, provide that an appellant may file an amended notice of appeal within 30 days after the expiration of the original 30-day filing period. After the expiration of the additional 30-day safety-valve period, however, the appellate court does not have jurisdiction to permit any further amendment of the notice of appeal. *Reeder v. Old Oak Town Center* (1984), 124 Ill. App. 3d 1045, 1048, 465 N.E.2d 113; see also *First Finance Co. v. Ross* (1965), 64 Ill. App. 2d 474, 211 N.E.2d 588 (notice of appeal could not be amended 50 days after initial 30 day period).

■ Here plaintiff's original notice was filed on January 11, 1984, within the 30-day statutory limit. The amended notice, however, was not filed until August 2, 1984, more than eight months after the denial of plaintiff's post-trial motion. Thus, the amended notice is not timely. We, therefore, deny plaintiff's motion to file the amended notice of appeal. Furthermore, since the untimely amended notice fails to provide this court with jurisdiction, we must look to the original notice to determine if the appeal is properly before this court.

Plaintiff's original notice of appeal stated, in pertinent part, that "Plaintiff-Appellant hereby appeals *** from the order entered on December 20, 1983, by the Honorable Myron Gomberg denying Plaintiff-Appellant's Motion for Reconsideration of the Summary Judgment in favor of Defendant-Appellee previously entered by him, Plaintiff-Appellant having filed a timely Motion for Reconsideration. Plaintiff-Appellant prays that the review in [*sic*] Court reverse the orders and/or remand this matter for further hearing and judgment."

Defendant contends that the notice is defective since it fails to clearly specify the judgment appealed from or the relief requested as required by Supreme Court Rule 303(c)(2). Defendant maintains that only those matters specified in the notice of appeal are properly before the appellate court. (*Yaw v. Beeghly* (1982), 109 Ill. App. 3d 627, 631, 440 N.E.2d 1066.) Thus, defendant argues that neither the summary judgment on plaintiff's complaint nor the summary judgment on the counterclaim are properly before this court.

■ The purpose of a notice of appeal is to inform the party in whose favor a judgment has been rendered that the unsuccessful party desires review. The notice is jurisdictional, but where a defect in the notice is one of form rather than substance, the appellate court is not necessarily deprived of jurisdiction. (*First National Bank v. City of*

*Aurora* (1976), 41 Ill. App. 3d 326, 329, 353 N.E.2d 309, *rev'd on other grounds* (1978), 71 Ill. 2d 1, 373 N.E.2d 1326.) Moreover, the notice should be considered as a whole, and absence of strict technical compliance is not fatal. 41 Ill. App. 3d 326, 330, 353 N.E.2d 309.

■ Defendant argues that the scope of our review must be limited by the notice of appeal to the denial of reconsideration and cannot include the summary judgment orders. A similar contention was raised in *Pickle v. Curns* (1982), 106 Ill. App. 3d 734, 435 N.E.2d 877. There the notice of appeal was from an order denying appellant's motion to reconsider dismissal of his third amended complaint and denying leave to plead over. The court there stated:

"A notice of appeal must 'specify the judgment or part thereof appealed from.' (73 Ill. 2d R. 303(c)(2).) An appellate court may not review a matter not raised as an issue in the notice of appeal unless the deficiency is one of form and not of substance. (*In re Estate of Malloy* (1981), 96 Ill. App. 3d 1020, 422 N.E.2d 76.) We think that, while plaintiff's notice of appeal should have specified the April 7, 1981, order dismissing his third amended complaint with prejudice, the error was merely one of form. The [defendant] was not prejudiced by the error. It was informed from the notice that plaintiff was appealing the denial of the motion for reconsideration which clearly implied a request for reversal of the dismissal of his third amended complaint. Plaintiff's appellate brief focuses upon the dismissal of that complaint. We will consider plaintiff's argument opposing the dismissal of his third amended complaint." (106 Ill. App. 3d 734, 737, 435 N.E.2d 877.)

We find the foregoing to be dispositive, and therefore, we will consider plaintiff's contentions concerning the orders for summary judgment.

## II

Plaintiff initially contends that the trial court erred in entering summary judgment in defendant's favor on plaintiff's amended complaint. Plaintiff maintains that summary judgment was improper since genuine issues of material fact were in dispute. Plaintiff argues that the intent of the parties to be bound was ambiguous and, consequently, present a disputed issue of fact precluding summary judgment.

An order granting summary judgment is appropriate when the pleadings, depositions, filed admissions, and affidavits show that there is no genuinely disputed issue of material fact, and that the moving party is entitled to judgment as a matter of law. (*Pioneer Bank & Trust Co. v. Mitchell* (1984), 126 Ill. App. 3d 870, 873, 467 N.E.2d

1011.) A disputed issue of fact exists when a material writing contains an ambiguity requiring the admission of extrinsic evidence. Under such circumstances, summary judgment is precluded. (*Cory v. Minton* (1977), 49 Ill. App. 3d 312, 316, 364 N.E.2d 311.) Similarly, determination of intent with regard to a particular instrument presents a question of fact precluding summary judgment when the language of the instrument contains ambiguities requiring the admission of extrinsic evidence. However, when the intent of the parties can be ascertained by the plain language of the instrument, no disputed question of fact exists. 49 Ill. App. 3d 312, 316, 364 N.E.2d 311.

■ Here plaintiff argues that the various conversations, writings, and proposed leases which passed between the parties during negotiations indicate ambiguities concerning the intent of the parties. This argument, however, is contravened by the language of paragraph 17(g) in the proposed lease. Paragraph 17(g) states that submission of the instrument constitutes no reservation or option for the premises, and that the lease will become effective only "upon the execution and delivery both by Lessor and Lessee." The plain language of paragraph 17(g) indicates that the parties did not intend to be bound at any time prior to the final execution of the lease agreement. Since that final execution never occurred, no intent to be bound can be inferred. Further, despite his numerous assertions, plaintiff has failed to provide any argument or provision to contradict the clear intent expressed in paragraph 17(g). We, therefore, find the intent of the parties to be unambiguous and, consequently, not a disputed issue of fact. Thus, the trial court did not err in granting summary judgment.

### III

Plaintiff contends that even if summary judgment was procedurally proper, the trial court erred as a matter of law in failing to find a contract between the parties. Initially, plaintiff maintains that the acts and conduct of the parties constitute "sufficient acceptance and meeting of the minds to have a completed contract." For a contract to exist, there must be both an offer and an acceptance, and the acceptance must comply strictly with the terms of the offer. (*Loeb v. Gray* (1985), 131 Ill. App. 3d 793, 799, 475 N.E.2d 1342; *Central National Bank v. Fleetwood Realty Corp.* (1982), 110 Ill. App. 3d 169, 174, 441 N.E.2d 1244.) An acceptance requiring any modification or change of terms constitutes a rejection of the original offer and becomes a counteroffer that must be accepted by the original offeror before a valid contract is formed. *Loeb v. Gray* (1985), 131 Ill. App. 3d 793, 799, 475 N.E.2d 1342; *Johnson v. Whitney Metal Tool Co.* (1950), 342 Ill. App. 258, 265,

96 N.E.2d 372.

■ Here plaintiff's original offer was substantially modified by defendant, thus creating not an acceptance, but a counteroffer. Plaintiff then rejected defendant's counteroffer and presented his own counter-counteroffer. Plaintiff then attempted to accept defendant's previously rejected counteroffer. A rejected offer cannot be revived by later acceptance. (*Johnson v. Whitney Metal Tool Co.* (1950), 342 Ill. App. 258, 267, 96 N.E.2d 372.) Thus, plaintiff's letter accepting the rejected counteroffer did not constitute a meeting of minds and, therefore, failed to establish any valid contract.

Plaintiff additionally maintains that a contract was created by defendant's May 14 letter, wherein defendant expressed the intention to finalize the proposed lease within the next few weeks. Prior agreements are not necessarily mere negotiations where it is clear that the ultimate contract will be based on terms substantially similar to those in the previous agreement. (*Interway, Inc. v. Alagna* (1980), 85 Ill. App. 3d 1094, 1097, 407 N.E.2d 615.) A letter of intent may constitute an enforceable contract if it was evident that such was the intent of the parties. (*Chase v. Consolidated Foods Corp.* (7th Cir. 1984), 744 F.2d 566.) However, if the later execution of a formal agreement is a condition precedent to the formation of a binding contract, no prior writing will create an effective contract. *Knightsbridge Realty Partners, Ltd.-75 v. Pace* (1981), 101 Ill. App. 3d 49, 52, 427 N.E.2d 815; *Interway, Inc. v. Alagna* (1980), 85 Ill. App. 3d 1094, 1098, 407 N.E.2d 615.

■ Although the May 14 letter admits an agreed-upon rental, it is silent as to any other proposed terms. Moreover, even if the May 14 letter provides an accurate representation of an agreement between the parties, paragraph 17(g) of plaintiff's initial proposed lease indicates that the parties intended that no agreement would be final until the lease was formally executed and delivered by both parties. Thus, even if the letter contained all pertinent agreements, execution of a formal document was a condition precedent to any binding agreement.

Lastly, plaintiff maintains that even if no express agreement existed between the parties, an implied contract was created since plaintiff relied to his detriment on defendant's representations that the proposed lease would be finalized. In this assertion, plaintiff appears to rely on the theory of equitable estoppel. Under the equitable estoppel theory, a party is precluded from asserting otherwise existing rights if a second party relied in good faith upon the conduct of the first party, thereby changing his position to his subsequent detriment. 18 Ill. L. & Prac. *Estoppel* sec. 23 (1956).

■ Plaintiff initially argues that construction on the Wabash Ave-

nue property was done for the benefit of defendant's tenancy. The record, however, fails to support this argument. The construction on the Wabash Avenue property not only was initiated by plaintiff but also was designed to increase plaintiff's rental revenues. Further, defendant expressed concern that the construction would impede the daily operation of its business. The foregoing fails to establish any detrimental action by plaintiff for defendant's benefit.

Plaintiff additionally argues that he sustained harm because he declined to seek new tenants, having assumed defendant would continue to occupy the property in question. Again, however, the record fails to demonstrate substantial detriment to plaintiff. The parties initiated lease discussions on March 9, 1981. Negotiations between the parties continued until June 15, 1981, when defendant informed plaintiff that no long-term lease would be signed. In short, the entire negotiation period lasted less than four months. Plaintiff's failure to seek new tenants during so brief a period is insufficient to be characterized as the detrimental reliance required under the equitable estoppel theory. We find this assertion to be without merit.

In sum, we fail to find an enforceable contract under any of the theories advanced by plaintiff. Initially, the acts and conduct of the parties fail to demonstrate either the acceptance or meeting of minds needed for a valid contract. In addition, the May 14 letter not only is not a binding agreement in and of itself, but also is precluded from constituting a final agreement by the language of paragraph 17(g). Finally, we fail to find that plaintiff suffered substantial harm because of his reliance on the actions and promises of defendant. Accordingly, the trial court did not err in not finding a contract between the parties.[2]

## IV

Plaintiff's final contention is that the trial court erred in awarding defendant $4,574.64 on the counterclaim. Defendant in the counterclaim alleged that a holdover tenancy existed from April 30, 1981, the expiration date of the prior lease, to July 9, 1981, the date on which defendant vacated the premises, and that paragraph 20 of the prior lease, which provided $175 per day as liquidated damages in the event of an unlawful holding over, would apply.

The trial court granted defendant's motion for summary judgment of the counterclaim as to liability only. The parties stipulated, without

---

[2]Defendant has contended, in the alternative, that no enforceable contract exists because plaintiff signed as the agent of a nonexistent entity. In light of our prior discussion, however, we do not reach this issue.

plaintiff admitting liability, that defendant paid $19,166 for rental and other charges after May 1, 1981; that defendant remained after said date for 70 days which at $175 per day amounted to $12,250; and that assuming liability, the amount due thereon is $4,574.64. Judgment was entered pursuant thereto for defendant against plaintiff in the latter amount. Plaintiff now maintains that the court must find a holdover tenancy for a term but at the increased rental of $9,583.30 per month. Defendant responds that plaintiff abandoned any claim that defendant was a holdover tenant for a term and that the prior lease of 1950 governs the holdover damages.

Plaintiff relies upon *Cottrell v. Gerson* (1938), 296 Ill. App. 412, 423-24, 16 N.E.2d 529, which states that the landlord may, at his election, treat the tenant as a trespasser and evict him or treat him as a tenant from year to year thereafter upon the same terms as in the original lease, or if applicable, upon terms which were thereafter partly changed.

■ Here, no modification of the original lease was made as to paragraph 20, and the original terms govern in the instant case. Further, the parties were negotiating a new lease for rental premises which were to be divided in size and significantly altered to decrease the frontage from 40 to 20 feet on Wabash Avenue, and to provide a rental three times as large as that in the expired lease. When a tenant remains in possession and continued to pay rent after the expiration of his lease, but at the same time carries on negotiations with the lessor for a new lease, such negotiations negate the possibility of any acquiescence or election by the lessor to create a holdover tenancy. (*Daehler v. Oggoian* (1979), 72 Ill. App. 3d 360, 364-65, 390 N.E.2d 417, citing *Yarc v. American Hospital Supply Corp.* (1974), 17 Ill. App. 3d 667, 307 N.E.2d 749.) Accordingly, the trial court did not err in failing to find a holdover tenancy for a term and correctly awarded holdover damages pursuant to paragraph 20 of the prior lease.

For the foregoing reasons, the motions taken with the appeal for decisions are denied; the summary judgments and the judgment awarding damages on the counterclaim are affirmed.

Motions denied; judgments affirmed.

SULLIVAN and PINCHAM, JJ., concur.