VINCENZO D'AGOSTINO, Plaintiff-Appellee, v. BANK OF RAVENSWOOD, as Trustee, *et al.*, Defendants-Appellants.

First District (6th Division)   No. 1—90—0895

Opinion filed October 26, 1990.—Rehearing denied December 11, 1990.

Paul Armstrong, of Chicago, for appellant.

Regas, Frezados & Harp, of Chicago (Peter G. Frezados, of counsel), for appellee.

JUSTICE McNAMARA delivered the opinion of the court:

Plaintiff, Vincenzo D'Agostino, brought this action against defendants Bank of Ravenswood, as trustee for Steve Spanos, the original seller, and Commercial National Bank of Chicago, as trustee for Peter Tselepatiotis, the subsequent purchaser, for specific performance of an alleged contract dated May 8, 1986, for the sale of a commercial building. Plaintiff asserted that the alleged contract between plaintiff and Spanos for the sale of the building for $230,000 was valid. At the time of trial, the property was held in trust for the subsequent purchaser, Tselepatiotis, who paid $232,500 for the property on October 16, 1986. Tselepatiotis subsequently purchased the restaurant business located in the building from the current lessee in July 1987. Only defendant Tselepatiotis is involved in this appeal.

At the conclusion of plaintiff's case in a trial without a jury, the court held that the agreement of May 8 was valid and awarded specific performance to plaintiff. After an evidentiary hearing, the court ordered plaintiff to pay Tselepatiotis the contract price of $230,000, and an additional $22,000 for improvements Tselepatiotis made to the restaurant. The court also ordered Spanos to pay Tselepatiotis $2,500, thereby returning to him the entire purchase price paid for the property. Additionally, the court found that Tselepatiotis held only a month-to-month tenancy in the restaurant premises.

On appeal, Tselepatiotis maintains that the court erred in awarding specific performance to plaintiff because the agreement of May 8 did not constitute a binding contract and it violated the Statute of Frauds (Ill. Rev. Stat. 1985, ch. 59, par. 1 et seq.). Alternatively, Tselepatiotis contends that if the contract was valid, plaintiff abandoned it when he later submitted another contract on May 29 containing substantial changes from the May 8 offer. Finally, Tselepatiotis argues that the trial court erroneously concluded that he held only a month-to-month tenancy in the restaurant premises.

The following facts were brought out at trial. Spanos owned the building located at 3928-32 N. Broadway in Chicago and was three years behind in property tax payments. Spanos listed the property for sale

with a real estate broker, William Vranas. In March 1985, plaintiff submitted an offer to buy the property for $225,000, and tendered an earnest money check for $1,000. Spanos rejected the offer and did not accept the check. (That offer is not at issue here.)

Vranas presented Spanos with a written offer from plaintiff to purchase the property for $230,000. An earnest money check in the amount of $1,000 from the initial offer dated March 22, 1985, was submitted with the offer.

Spanos testified that when he received the offer on May 13, 1986, he drew a line through the $230,000 figure, raised the price to $235,000, initialed the price change, and signed the offer at the bottom. Later that day, Vranas informed Spanos that plaintiff would not accept the offer at $235,000.

The parties stipulated at trial that Spanos orally agreed with Vranas during a telephone conversation that he would reduce the price to the original $230,000. Plaintiff later drew a line through the $235,000 figure which Spanos had inserted in the offer, reduced the price to $230,000, and initialed the change. Spanos never initialed the document after plaintiff changed the written price to $230,000.

On May 20, plaintiff asked his attorney, Garry Barker, to review the alleged contract. Vranas testified that he met with plaintiff and Barker on May 21, intending to pick up a new check from plaintiff for $1,000 as earnest money, thereby replacing the previous outdated check of March 22, 1985. According to Vranas, Barker stated at the meeting that the May 8 contract should be "ripped up" because it was not acceptable to plaintiff for several reasons, and that he wanted plaintiff's outdated earnest money check returned. Barker wanted to draft another contract that would meet plaintiff's objections by including mortgage and inspection contingencies, as well as certain seller's warranties.

Vranas spoke with Spanos following the meeting with plaintiff and Barker on May 21, and explained that they wanted to rip up the contract, prepare another, and that they had taken back the earnest money. Spanos indicated that he still wanted to sell the property, because he was behind in his taxes, and requested Vranas to try to find another buyer.

Vranas testified further that he met with Barker and plaintiff on May 29, at which time they presented him with a new offer setting forth the proposed changes and tendered a check for $1,000. This new real estate contract drawn by Barker provided for a reduction in earnest money, mortgage and inspection contingencies, and seller's representations regarding the heating, cooling, lighting and plumbing fixtures and systems in the building. There is no reference in the new contract to the

previous May 8 offer.

Spanos rejected the offer of May 29. Vranas next contacted Spanos in the middle of June, indicating that he had several offers for the property. On June 10, 1986, Spanos accepted an offer to sell the subject property to Tselepatiotis for $232,500, and closed that sale on October 6, 1986.

After plaintiff learned from Vranas that the property had been sold to Tselepatiotis, he filed this suit for specific performance of the May 8 contract. In addition, plaintiff filed a *lis pendens* covering the subject property. Spanos filed a counterclaim for damages against plaintiff and Barker which the trial court dismissed. That dismissal is not at issue in this appeal.

The trial court found that there was a meeting of the minds between the plaintiff and Spanos and that the May 8 contract was valid. Specifically, the judge held that on May 13 when Spanos struck the original price of $230,000, raised the price to $235,000 and initialed and signed the contract, and subsequently acquiesced to the original amount of $230,000, it had no impact on the moment in time when the parties entered into the alleged contract.

We disagree with the trial court's finding that the May 8 contract was valid and that the subsequent negotiations between plaintiff and Spanos concerning the price were of no consequence.

■■■ An acceptance requiring any modification or change of terms constitutes a rejection of the original offer and becomes a counteroffer that must be accepted by the original offeror before a valid contract is formed. *(Ebert v. Dr. Scholl's Foot Comfort Shops, Inc.* (1985), 137 Ill. App. 3d 550, 558, 484 N.E.2d 1178, citing *Loeb v. Gray* (1985), 131 Ill. App. 3d 793, 799, 475 N.E.2d 1342.) In the present case, plaintiff's original May 8 offer of $230,000 was rejected by Spanos when he drew a line through the $230,000 figure, increased the price to $235,000, initialed the price change and signed the offer at the bottom. This created not an acceptance, but a counteroffer. Spanos' oral acquiescence to the previously offered price constitutes an acceptance of a rejected offer. A rejected offer cannot be revived by later acceptance. *(Ebert v. Dr. Scholl's,* 137 Ill. App. 3d 550, 484 N.E.2d 1178; *Johnson v. Whitney Metal Tool Co.* (1950), 342 Ill. App. 258, 96 N.E.2d 372.) On that basis alone, we find that the trial court erred in awarding specific performance to plaintiff.

■■ ■ We also believe that the action is barred by the Statute of Frauds (Ill. Rev. Stat. 1985, ch. 59, par. 2). Section 2 of that statute provides in relevant part:

"No action shall be brought to charge any person upon any con-

tract for the sale of lands *** unless such contract or some memorandum or note thereof shall be in writing, and signed by the party to be charged therewith, or some other person thereunto by him lawfully authorized in writing, signed by such party."

Further, to be specifically enforceable, a contract for the sale of land must contain in writing the essential contract terms such as the names of the vendor and vendee, the price, and the terms and conditions of the sale. *Chicago Investment Corp. v. Dolins* (1981), 93 Ill. App. 3d 971, 418 N.E.2d 59.

■ Although the parties stipulated at trial that Spanos orally agreed with Vranas during a telephone conversation that he would reduce the price to the original $230,000, Spanos never initialed the document after plaintiff changed the written price to $230,000. Thus, the alleged contract fails to comply with the Statute of Frauds because one of the essential terms of the contract, the price, was never reduced to writing and signed by Spanos, the party to be charged.

■ We also note that this court has consistently held that specific performance may be granted only where there is a valid and enforceable contract. (*Perkins v. Garcia* (1990), 194 Ill. App. 3d 590, 593, 551 N.E.2d 258, citing *Chicago Investment Corp. v. Dolins*, 93 Ill. App. 3d 971, 418 N.E.2d 59.) In addition, where a party seeks specific performance of a contract, the law requires a greater degree of specificity than is demanded for other purposes. Where the court would be left to order further negotiations and where the parties have yet to reach agreement on essential terms, specific performance is not available. *Cinman v. Reliance Federal Savings & Loan Association* (1987), 155 Ill. App. 3d 417, 508 N.E.2d 239.

We conclude that a valid contract was not established. Accordingly, plaintiff is not entitled to specific performance. Having so concluded, we need not reach the issue raised by Tselepatiotis as to whether plaintiff's later actions in submitting another contract on May 29 constituted an abandonment of the previously submitted offer. The issue of Tselepatiotis' month-to-month tenancy in the restaurant premises also need not be reached, as he is now the owner of the entire building.

For the foregoing reasons, the judgment of the circuit court of Cook County granting specific performance to plaintiff and ordering Spanos to pay Tselepatiotis $2,500 is reversed.

Judgment reversed.

EGAN and RAKOWSKI, JJ., concur.