**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2024 IL App (3d) 230297-U

Order filed December 31, 2024

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2024

| | | |
|---|---|---|
| LEA SAVENOK, | ) | Appeal from the Circuit Court |
| | ) | of the 18th Judicial Circuit, |
| Plaintiff-Appellant, | ) | Du Page County, Illinois, |
| | ) | |
| v. | ) | Appeal No. 3-23-0297 |
| | ) | Circuit No. 18-CH-1324 |
| | ) | |
| NATIONSTAR MORTGAGE, LLC D/B/A | ) | Honorable |
| MR. COOPER, | ) | Anne T. Hayes, |
| | ) | Judge, Presiding. |
| Defendant-Appellee. | ) | |

_____

JUSTICE HOLDRIDGE delivered the judgment of the court.
Justices Peterson and Albrecht concurred in the judgment.

_____

**ORDER**

¶ 1        *Held*:  The circuit court properly granted summary judgment. No contract was formed between the parties, and the seller had no right to demand specific performance.

¶ 2        Appellant[1], Lea Savenok, and her husband, Pavel Savenok, sought to enter into a short sale agreement with the holder of their mortgage, Nationstar Mortgage, LLC, d/b/a Mr. Cooper

_____

[1] The complaint in the underlying matter was filed jointly by Lea Savenok and Pavel Savenok who were, at that time, joint owners of the property and mortgagees of record, and shall be referred to hereinafter collectively as "the Savenoks." Lea Savenok and Pavel Savenok, respectively, have filed separate but identical appeals. Pavel Savenok's appellate case number is 3-23-0298.

(Nationstar), to sell their home. The Savenoks and the buyer did not agree to Nationstar's contract terms for a short sale to occur. Instead, the buyer modified the contract without the approval of Nationstar, and the Savenoks sought enforcement of the contract with modified terms. Nationstar filed a motion for summary judgment, which was granted, the circuit court having found that a contract was never formed requiring Nationstar to proceed with the short sale. Savenok appealed.

¶ 3                                                    I. BACKGROUND

¶ 4        Lea and her husband, Pavel Savenok, owned and lived in the property located at 102 E. Farnham Lane, Wheaton, Illinois (property). The property was secured by a mortgage held by Nationstar. In December of 2017, the mortgage was in default, and the Savenoks expressed interest in entering into a contract to short sell the property. On June 28, 2018, Nationstar conditionally approved the short sale of the property. Nationstar sent a conditional approval letter to the Savenoks, which listed seventeen conditions required for the short sale. One of those conditions was that the Savenoks and the buyer complete Nationstar's Short Sale Affidavit.

¶ 5        Between July 2018 and August 2018, the Savenoks scheduled a closing of the short sale on several occasions, and on each occasion the Savenoks signed the conditional approval letter, but on each occasion the closing was postponed. The closing was scheduled again for August 30, 2018, and prior to closing the Savenoks again signed the conditional approval letter and the Short Sale Affidavit. The closing did not occur because of corrections which needed to be made to the Settlement Statement and because the buyer refused to sign the Short Sale Affidavit.

¶ 6        The closing was rescheduled for September 7, 2018, and on September 6, 2018, the Short Sale Affidavit was signed by the Savenoks and by the buyer and submitted to Nationstar. However, the buyer included several handwritten addenda to the affidavit, including language

2

which stated, "[b]uyer intends to allow Sellers to rent the property back for yet to be determined timeframe." Nationstar informed the Savenoks and the buyer that the affidavit was not acceptable with the buyer's alterations, and they informed the Savenoks of corrections which needed to be made to the Settlement Statement. Later that day, the Short Sale Affidavit was resubmitted without the handwritten addenda, but with the same addenda typed on a separate page.

¶ 7    On September 7, 2018, at 6:59 a.m., the Savenoks' real estate broker wrote to Nationstar, "[w]e are waiting on your approval of the closing documents and 'clear to close.' " On September 7, 2018, at 7:10 a.m., Nationstar responded "Settlement Statement is rejected . . . CLOSE DATE ON SETTLEMENT IS NOW EXPIRED, PLEASE UPDATE." On September 7, 2018 at 8:27 a.m., Nationstar sent "FINAL APPROVAL TO CLOSE[,]" indicating that the amounts set forth on the Settlement Statement matched those figures approved by Nationstar, and attaching the corrected and approved Settlement Statement.

¶ 8    In two separate messages sent at 12:06 p.m. and 12:08 p.m. on September 7, 2018, the buyer's counsel informed the Savenoks that she could not go to closing without the Short Sale Affidavit being approved by Nationstar. On September 7, 2018, at 12:11 p.m., the Savenoks communicated the following to Nationstar: "Due to circumstances beyond our control, we are unable to complete the closing today. Request is made for an extension to 9/14/18 to complete the closing."

¶ 9    On September 13, 2018, the Savenoks' attorney requested that Nationstar send a letter approving the altered Short Sale Affidavit. Specifically, they requested that Nationstar allow the buyer's alterations to the Short Sale Affidavit and for Nationstar to allow the transaction to close.

3

¶ 10        Nationstar responded that it could not approve those addenda and provided its reasoning. Nationstar explained that some of the additions were already covered by broader language in the Short Sale Affidavit (and, thus, they could create confusion). Also, the added language allowing the Savenoks to rent the property back for a "yet to be determined timeframe" could lead to a violation of one of the terms of the form Short Sale Affidavit, which stated that the Savenoks were only permitted to remain as tenants for a period no longer than 90 days.

¶ 11        Nationstar would not approve the altered Short Sale Affidavit, the buyer refused to agree to Nationstar's unaltered terms, and the sale did not go through. On or about October 29, 2018, the Savenoks filed their complaint for the underlying action in the circuit court for breach of contract, specific performance, and equitable estoppel.[2]

¶ 12        Although Nationstar denied the merit of the Savenoks' claims, Nationstar agreed to allow the buyer to amend the Short Sale Affidavit in an effort to resolve the lawsuit. The short sale closing was scheduled, cancelled, and rescheduled four times by the buyer or the Savenoks between July and September of 2019. The Savenoks requested an extension to close, which was granted by Nationstar, which stated it would be the final extension. That closing was set for October 7, 2019, and it was also cancelled because of complications with the buyer signing and returning the Short Sale Affidavit. Nationstar did not agree to another extension of the closing.

¶ 13        On September 8, 2022, Nationstar filed a motion for summary judgment, arguing that no contract was formed due to the buyer's refusal to accept the unaltered terms of the Short Sale Affidavit.

---

[2] The estoppel issue has not been raised on appeal, and was abandoned during the trial court proceeding at summary judgment.

On May 26, 2023, the circuit court granted summary judgment and dismissed the Savenoks' claims. Savenok now appeals that order.

¶ 14                                   II. ANALYSIS

¶ 15        On appeal, Savenok claims that the circuit court improperly granted summary judgment in favor of Nationstar as there was a material issue of fact as to whether a short sale contract existed between the parties. She contends (1) a contract was formed on September 7, 2018, wherein Nationstar approved the Savenoks' Short Sale Affidavit, and Nationstar breached that contract, and (2) the Savenoks are entitled to specific performance requiring Nationstar to allow the short sale to proceed.

¶ 16        Summary judgment is appropriate where the pleadings, depositions, admissions and affidavits on file show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2016). To prevent the entry of summary judgment, the nonmovant need not prove their case, but instead must present facts sufficient to support the elements of a claim. *Kempes v. Dunlop Tire & Rubber Corp.*, 192 Ill. App. 3d 209, 214 (1989). This court reviews the grant of summary judgment *de novo*. *Bank of America, N.A. v. Adeyiga*, 2014 IL App (1st) 131252, ¶ 56.

¶ 17        It is a well-settled principle of contract law that in order for a contract to be formed between two parties, there must be mutual assent by the contracting parties on the essential terms and conditions of the subject on which they are contracting. *Loeb v. Gray*, 131 Ill. App. 3d 793, 799 (1985). "For a contract to exist there must be an offer and acceptance, and to create a binding contract the acceptance must comply strictly with the terms of the offer." *Id*. "An acceptance requesting modification or containing terms that vary from those offered constitutes a

5

rejection of the original offer and becomes a counterproposal that must be accepted by the original offeror before a valid contract is formed." *Id.*

¶ 18    There were three parties to the contract: Nationstar, the Savenoks, and the buyer. Nationstar conditionally approved the short sale of the property on multiple occasions. Prior to each attempt to close on the property, Nationstar sent the Savenoks a conditional approval letter listing the conditions of the sale. Acceptance of the unaltered Short Sale Affidavit by both the Savenoks and the buyer was a requirement listed in the conditional approval letter for the short sale to proceed. The Savenoks agreed to the terms of the conditional approval letter. However, the buyer refused to accept the terms of the contract.

¶ 19    When the buyer altered the terms of the offer by writing in her own addenda, she rejected Nationstar's offer and created a counteroffer that had to be accepted by Nationstar before a valid contract could be formed. Nationstar never accepted the buyer's counteroffer, so a contract was never formed.

¶ 20    Savenok argues that Nationstar agreed to the Savenoks' and the buyer's counterproposal and accepted the short sale contract as modified when Nationstar sent an email on September 7, 2018, stating, "FINAL APPROVAL TO CLOSE." However, upon review of the record, it is clear that Nationstar's approval referred solely to the fact that the Settlement Statement was correct. At no point did Nationstar agree to the altered terms of the Short Sale Affidavit. In fact, Nationstar explicitly rejected the altered terms of the Short Sale Affidavit on numerous occasions, and on at least one occasion provided their reasoning, stating they would lead to confusion and contradictions in the Short Sale Affidavit. Because Nationstar did not accept the Savenoks' modified Short Sale Affidavit, the parties never entered into an enforceable contract.

¶ 21    In their complaint, the Savenoks also sought specific performance, *i.e.*, requesting that the court order Nationstar to allow the Savenoks to proceed with the short sale using the altered terms of the Short Sale Affidavit. "To state a cause of action for specific performance, the plaintiff must allege and prove the following elements: (1) the existence of a valid, binding, and enforceable contract; (2) compliance by the plaintiff with the terms of the contract, or proof that the plaintiff is ready, willing, and able to perform the contract; and (3) the failure or refusal of the defendant to perform his part of the contract." *Hoxha v. LaSalle Nat. Bank*, 365 Ill. App. 3d 80, 85 (2006). For the reasons listed above, there was never a contract between Nationstar and the Savenoks, and, as such, the Savenoks' claim for specific performance was properly dismissed by the circuit court.[3]

¶ 22    Because there was no contract between the parties, the Savenoks were unable to establish the essential elements of a claim for either breach of contract or specific performance, and the circuit court properly granted Nationstar's Motion for Summary Judgment. See *Kempes*, 192 Ill. App. 3d at 214.

¶ 23                              III. CONCLUSION

¶ 24    The judgment of the circuit court of DuPage County is affirmed.

¶ 25    Affirmed.

---

[3] Additionally, this issue is moot as the property was sold at sheriff's sale sometime shortly after October 11, 2023, when this court denied the Savenoks' motion to stay the sheriff's sale.